United States District Court
Middle District of Florida
Orlando Division

ELIZABETH A. MOWERY,

     **Plaintiff,**

**v.**                             **NO. 6:22-cv-2314-ACC-LLL**

KILOLO KIJAKAZI, **Acting**
**Commissioner of Social Security,**

     **Defendant.**

---

### Report and Recommendation

Elizabeth A. Mowery seeks judicial review of a decision by the Commissioner of Social Security denying her claim for supplemental security income (SSI) under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, I respectfully recommend the Commissioner's decision be affirmed.

### Background

Mowery was born in 1968, completed high school through 10th grade, and has past relevant work experience as a merchandise distributor. Tr. 107, 118, 124. On September 18, 2019, Mowery protectively filed an application for SSI, alleging disability due to neuropathy in both feet, strokes, spinal stenosis, arthritis, diabetes, high blood pressure, COPD,[1] anxiety, bronchial problems, asthma, severe foot pain, chronic knee pain, vein blockage, and a heart issue. Tr. 125, 140. The Social Security

---

[1] Chronic obstructive pulmonary disease.

Administration (SSA) denied her application both initially and upon reconsideration. Tr. 139-64, 167-78.

At Mowery's request, an Administrative Law Judge (ALJ) conducted a hearing on February 17, 2022. Tr. 102-23. Mowery was represented by counsel and testified on her own behalf. *Id.* A vocational expert (VE) also testified. Tr. 117-22. The ALJ issued an unfavorable decision on March 29, 2022. Tr. 77-95.

In her decision, the ALJ found Mowery (1) had not engaged in substantial gainful activity since September 18, 2019, the SSI application date; (2) has the severe impairments of anxiety, cervical spine disorder, hypertension, arthritis in the right foot, peripheral artery disease, status post cerebral vascular accident, diabetes mellitus, neuropathy, and obesity; (3) did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1;[2] (4) has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations; and (5) is unable to perform any past relevant work, but that there are jobs which exist in significant numbers in the national economy that she can perform, including office helper, mail clerk, and bench worker. Tr. 79-94. Thus, the ALJ concluded Mowery is not disabled. Tr. 95. Mowery requested appellate review, which was denied. Tr. 10-12. The ALJ's decision is the final decision of the Commissioner.

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations (C.F.R.) are to the version in effect at the time of the ALJ's decision.

## Authority

The Social Security Act provides various types of benefits to those who cannot find work because of a disability. *See* 42 U.S.C. §§ 423(a); 1381a. A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a). A "physical or mental impairment" results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

The Social Security Regulations (Regulations) set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101–02 (11th Cir. 2021) (citations omitted). The ALJ must determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has any severe medically determinable physical or mental impairments; (3) has a severe impairment which meets or equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) has an RFC which allows for the claimant to perform past relevant work; and (5) can make an adjustment to perform other work given the claimant's RFC, age, education, and work experience. *Id.*

Although the claimant has the burden of proof in steps one through four, the burden shifts to the Commissioner in step five to show "the existence of . . . jobs in the

national economy which, given the claimant's impairments, the claimant can perform." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (alteration in original) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In its determination, the Commissioner may take "administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT).[3] 20 C.F.R. §§ 404.1566(d); 416.966(d). The Commissioner may also consider the testimony of a VE in making this determination. *Id.* at §§ 404.1566(e); 416.966(e). To elicit testimony, the ALJ will pose hypothetical questions to the VE to determine whether a person with the claimant's limitations can secure employment in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). If the Commissioner makes this showing, the burden shifts back to the claimant to prove he or she is unable to perform the jobs suggested. *Goode*, 966 F.3d at 1279.

A Court's review of a decision by the Commissioner is limited to determining whether correct legal standards were applied and whether substantial evidence supports her findings. 42 U.S.C. §§ 405(g); 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation omitted). In other words, there must be sufficient evidence

---

[3] The Eleventh Circuit has defined the DOT as an "extensive compendium of data about the various jobs that exist in the United States economy[, including] information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (citation omitted). In its review, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ. *Goode*, 966 F.3d at 1280 (citation omitted). Within this role, however, federal courts do not "act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The court retains an important function to "scrutinize the record as a whole" and determine whether the ALJ's decision was reasonable. *Id.* While the court reviews the Commissioner's decision with deference to his factual findings, legal conclusions are reviewed de novo. *Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## Analysis

On appeal, Mowery raises five issues, claiming that 1) the VE's testimony was unsubstantiated; 2) there was an unresolved conflict between the VE's testimony and the DOT; 3) the ALJ improperly analyzed Mowery's subjective complaints of pain; 4) the ALJ failed to properly consider the opinion of Dr. Binny Singh, Psy. D.; and 5) the ALJ failed to properly consider a third-party statement from Mowery's daughter. Docs. 15 at 5-21; 24. The Commissioner counters the ALJ properly considered the VE's testimony, Mowery's subjective complaints of pain, the medical opinions of

record, and other evidence, and her decision is supported by substantial evidence. Doc. 22 at 5-26. After careful consideration, including a thorough review of the record and the arguments of the parties, the Court finds the ALJ's decision should be affirmed.

### A.    The VE's Testimony Regarding the Number of Available Jobs

In her first issue, Mowery claims the VE's testimony does not constitute substantial evidence to support the ALJ's finding at step five. Specifically, Mowery asserts the ALJ's step-five finding is unsupported because the VE did not provide the basis for his testimony regarding the number of jobs available in the national economy for the positions the ALJ found Mowery could perform. Docs. 15 at 5-13; 24 at 1-4. Notwithstanding that Mowery's counsel did not object or inquire of the VE about this issue at the administrative hearing, *see* tr. 121-22, Mowery claims the fact that the VE did not offer the basis for his opinion regarding the number of jobs in the national economy invalidates the ALJ's finding on that issue. Doc. 15 at 5-13. In doing so, Mowery relies on *Bisetek v. Berryhill*, 139 S. Ct. 1148 (2019). *Id*. at 5. In *Bisetek*, the Supreme Court held that a VE's refusal to provide the private market-survey data underlying her opinion regarding job availability upon the applicant's request does not categorically preclude her expert testimony from constituting substantial evidence; rather, the inquiry is based on the facts of the particular case. *Id*. at 1150. Further, the Court provided some examples of when a VE's testimony may or may not constitute substantial evidence:

> Assuming no demand [for supporting data], a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data. Take an

6

> example. Suppose an expert has top-of-the-line credentials, including professional qualifications and many years' experience; suppose, too, she has a history of giving sound testimony about job availability in similar cases . . . . Now say that she testifies about the approximate number of various sedentary jobs an applicant for benefits could perform. She explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities; and extrapolating those findings to the national economy by means of a well-accepted methodology. She answers cogently and thoroughly all questions put to her by the ALJ and the applicant's lawyer. And nothing in the rest of the record conflicts with anything she says. But she never produces her survey data. Still, her testimony would be the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability.

*Id*. at 1155 (internal quotations and citation omitted). The Supreme Court went on to compare that example with a perhaps less-qualified expert who fails to produce such data and "offer[s] testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar." *Id*. at 1155-56.

Relying on *Bisetek*, Mowery argues that because the VE did not indicate what he relied on in determining the number of jobs available in the national economy for the positions he found Mowery could perform, the ALJ's reliance on his testimony at step five was insufficient to constitute substantial evidence. Doc. 15 at 11-13. In response, the Commissioner asserts that the VE's testimony regarding the number of jobs available in the national economy was sufficient, particularly considering that Mowery's attorney did not object or seek any further information from the VE at the hearing on that issue. Doc. 22 at 7-10.

7

In *Bacon v. Commissioner of Social Security*, the Eleventh Circuit found the ALJ's reliance on the VE's testimony regarding the number of jobs available in the national economy was sufficient to constitute substantial evidence, specifically noting that, as in this case, the claimant did not "object to the VE's testimony or inquire further into her methodology" and, in fact, "stipulated that the VE was qualified to testify." 861 F. App'x 315, 320 (11th Cir. 2021) (per curiam).[4] *See also Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (per curiam) (ALJ did not err in relying on VE's testimony when the claimant "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion."); *Moore v. Saul*, no. 8:18-cv-2423-T-CPT, 2020 WL 814003, at *3-*4 (M.D. Fla. Feb. 19, 2020) (finding VE's testimony constituted sufficient evidence for ALJ's step-five finding regarding the number of jobs available where the VE indicated his testimony was consistent with the DOT and where the claimant "did not object to the VE's qualifications" or "request any supporting data for the VE's conclusion or challenge the reliability of his jobs number.").

Here, Mowery's attorney stipulated to the VE's qualifications as a vocational expert, tr. 118; this is supported by his resume, *see* tr. 485-87. At the administrative hearing, the VE testified about the number of jobs available in the national economy for the positions he found Mowery was able to perform, which the ALJ then relied on

---

[4] The Court acknowledges and considers that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citation omitted).

at step five, *i.e.*, an office helper, mail clerk, and bench worker. Tr. 94, 119-20. As noted above, Mowery's attorney did not ask any questions or seek any clarification from the VE regarding that issue, but rather, argues that *Bisetek* requires a finding that the ALJ's determination regarding the number of jobs available was not supported by substantial evidence. After review of the relevant case law noted above, including *Bisetek*, I find the circumstances here do not warrant such a result.

Initially, I note again, that *Bisetek* stands for the proposition that a VE's refusal to provide the data underlying her opinion regarding job availability upon the disability applicant's request does not categorically preclude her expert testimony from constituting substantial evidence; rather, the inquiry is based on the facts of the particular case. 139 S. Ct. at 1155. Here, a well-qualified VE—whose expertise was stipulated to—testified regarding the number of available jobs; Mowery asked no questions, sought no clarification, and offered no contradicting data. I find this testimony sufficiently supports the ALJ's finding at step five.

Within her argument, Mowery attempts to distinguish the cases discussed above. For instance, in the *Bacon* case, Mowery points to the fact that the claimant there proffered new employment statistics to the district court for the first time; however, this does not change the *Bacon* Court's conclusion that the VE's testimony was sufficient to constitute substantial evidence for the ALJ's finding regarding the number of jobs available in the national economy. *See* doc. 15 at 10-11; *Bacon*, 861 F. App'x at 320. Mowery also relies heavily on *Ruenger v. Kijakazi*, in which the Seventh Circuit found a VE's testimony was insufficient to constitute substantial evidence to

support the ALJ's finding regarding the number of available jobs. 23 F.4th 760, 763-64 (7th Cir. 2022) (per curiam). However, the *Ruenger* Court found the way in which the VE compiled her job numbers was unclear, and noted that "when, as here, the claimant challenges the job-number estimate, the ALJ must compel the [VE] to offer a reasoned and principled explanation of the methodology she used to produce the estimate." *Id*. at 763. (internal quotations and citation omitted). Here, again, the VE's testimony was unchallenged and there is nothing to indicate his testimony "contained inconsistencies and lacked the clarity needed for the ALJ to have confidence in [his] estimates." *Id*. at 764. Thus, Mowery's reliance on *Ruenger* is unavailing.

Because I find the VE's unchallenged testimony constitutes sufficient evidence to support the ALJ's finding at step five, remand is not warranted.

### B.    Conflict Between the VE's Testimony and DOT

In her second issue, Mowery claims there is a conflict between the VE's testimony regarding the jobs Mowery is able to perform and the DOT. Docs. 15 at 13-15; 24 at 4-5. Specifically, Mowery claims the ALJ's finding that she could only stand and/or walk for four hours out of an eight-hour workday, *see* tr. 82, conflicts with the DOT's description of "light" work and that "[n]one of the three cited jobs contain more specific guidance on their respective standing requirements and the VE did not provide any basis in the testimony to accommodate this discrepancy." Doc. 15 at 13. Thus, Mowery claims the "light" work designation appears to conflict with her limitation to jobs not requiring more than fours hours of standing and/or walking in an eight-hour workday.

Regarding "light" work, the Regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). For the three positions identified by the VE and relied on by the ALJ, the DOT provides they are rated as "light work," defined in relevant part as "requir[ing] walking or standing to a significant degree" or "sitting most of the time but entails pushing and/or pulling of arm or leg controls." 1991 WL 671813 §§ 209.687-026 (mail clerk); 706.684-022 (bench worker); 239.567-010 (office helper). At the administrative hearing, the ALJ asked the VE about the vocational capabilities of a hypothetical individual who, among other limitations, could stand and/or walk "four hours out of an eight-hour workday." Tr. 119. In response,  the VE testified that the office helper job was an option for that individual, but he reduced the number of available positions to 82,900 jobs nationally. Tr. 119-20. Further, the VE testified the mail clerk job was an option, although he reduced the number of available positions to 28,400 nationally, as well as the bench worker position, which "can be done with a sit/stand option at will." Tr. 120. These are the three jobs the ALJ relied on in her step-five finding. Tr. 94. The ALJ asked the VE if his testimony was consistent with the DOT, to which the VE responded it was, however, noted that the DOT "lists the maximum expectant requirements of occupations and not the range, therefore a light duty job doesn't [necessarily] mean a person has to stand, walk, or lift." Tr. 121.

Mowery does not address the VE's testimony regarding the potential conflict, stating instead that the "VE did not provide any basis in the testimony to accommodate

11

[the] discrepancy," doc. 15 at 13; this is belied by the testimony outlined above. Although there may have been a potential apparent conflict between the ALJ's limitation that Mowery not stand and/or walk for more than four hours in an eight-hour workday and the requirements of "light" level work, the VE testified regarding how that limitation would affect the positions he identified and further clarified that the DOT provides the maximum requirements of occupations, as opposed to a range. Thus, the VE adjusted the number of jobs available due to the ALJ's stated limitation in this regard and clarified any apparent conflict with the DOT. Mowery does not argue the VE's explanation was wrong, rather, she argues only that the VE failed to provide an explanation, *see generally* doc. 15 at 13-15. Because a sufficient explanation was provided and relied on by the ALJ, remand is not warranted.

### C.    Mowery's Subjective Complaints of Pain

Mowery next claims the ALJ improperly analyzed her subjective complaints of pain. Docs. 15 at 16-19; 24 at 5-6. Specifically, Mowery claims the ALJ did not provide a sufficient rationale for not fully crediting Mowery's testimony; overemphasized her daily activities; and erred in finding Mowery did not need an assistive device. *Id.* In response, the Commissioner asserts the ALJ's decision regarding Mowery's subjective complaints was adequately supported and that Mowery's argument amounts to a request for this Court to re-weigh the evidence. Doc. 22 at 15-21.

To establish a disability based upon a complaint of pain, a claimant must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain, or (b) the objectively determined

medical condition can be reasonably expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Id.* (citing *Hale*, 831 F.2d at 1011). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). A reviewing court will not disturb an ALJ's clearly articulated credibility finding that is supported by substantial evidence on the record. *Foote*, 67 F.3d at 1562 (citation omitted). Moreover, there is no requirement that the ALJ specifically refer to every piece of evidence in her decision, so long as the reviewing court can conclude the ALJ considered the claimant's medical condition as a whole. *Dyer,* 395 F.3d at 1211.

At the administrative hearing, Mowery testified she stopped working in 2018 due to pain in her feet, legs, back, and knees. Tr. 107-108. At that time, she did not know what the source of her pain was; she subsequently learned she had arthritis and neuropathy in her feet. Tr. 108. Mowery testified she takes three medications that make her drowsy. Tr. 108-109. At the time of the hearing, Mowery stated she had recently broken her knee and back due to a fall. Tr. 109. Mowery testified that, prior to the fall, her ability to walk was limited. Tr. 109-10.

Regarding her limitations, Mowery testified she could sit without pain for "maybe" 10-15 minutes and that she used a walker and wheelchair because she was unable to put any weight on her knee or pressure on her back. Tr. 110-11. Mowery previously had a bypass procedure in her leg and stated her leg has been numb since

that surgery from her knee down, which prevents her from being able to drive. Tr. 111.
Regarding her daily activities, Mowery stated she is able to sit and fold her laundry,
although she cannot get up and put it in the washer or dryer; and she is unable to cook
due to being in a wheelchair as the result of a fall that occurred in January 2022. Tr.
111-12. Mowery testified that she feels like she is going to fall all the time, which is
why she uses a walker or cane. Tr. 113. Regarding her mental health, Mowery stated
she suffers from anxiety and depression and takes Prozac, which makes her tired. *Id.*
Mowery feels angry sometimes and stays in bed and keeps to herself often. Tr. 114.
She also has difficulties sleeping due to her mind racing. *Id.* When questioned by the
ALJ, Mowery clarified she has only used the wheelchair since her fall in January 2022;
prior to that, she had used a walker or cane since 2020. Tr. 115-17.

In her RFC analysis, the ALJ summarized much of the medical evidence and
found that, while Mowery's medically determinable impairments could reasonably be
expected to cause the alleged symptoms, her "statements concerning the intensity,
persistence[,] and limiting effects of these symptoms are not entirely consistent with
the medical evidence and other evidence in the record for the reasons explained in this
decision." Tr. 89. In support, the ALJ acknowledged that the medical evidence
supports the presence of physical and mental impairments reasonably expected to
cause the symptoms Mowery alleged, but not to the "full extent to which she alleges
them." Tr. 87. In support, the ALJ noted that Mowery underwent surgery in January
2020 for a "lower extremity femoral popliteal bypass procedure with a propaten graft."
Tr. 84. However, the ALJ found the surgery was generally successful in relieving

14

Mowery's symptoms, noting that she was discharged after receiving physical and occupational therapy and found to be stable four weeks later. Tr. 87; *see also* tr. 750 (February 2020 record indicating Mowery complained of recent chills and night sweats and some wound pain, but that "all other symptoms [were] reviewed and are negative."). By February 27, 2020, Mowery had her wound re-checked and it was determined that no further vascular intervention was required. Tr. 87 (citing tr. 868). By September 2020, Mowery's thigh wound had healed completely without evidence of infection and with intact blood flow, although she was noted to have neuropathy. *Id*. (citing tr. 858). The ALJ also found there was "no indication from hospital records that [a] hand-held assistive device was necessary after her recovery from the graft and wound." Tr. 88. The ALJ acknowledged that Mowery was noted to have arthritis, but noted the only imaging to support this was a finding of minimal arthritis in her right foot dated September 2019. *Id*. (citing tr. 505).

Regarding an assistive device, the ALJ acknowledged that Mowery was noted to use a cane in July 2020; however, the doctor indicated "no significant or remarkable physical examination findings except for . . . reported tenderness in hip or knees when palpated." *Id*.; tr. 841. Further, in August 2020, Mowery reported using a cane to her medical provider, but the ALJ noted the corresponding physical examination revealed unremarkable findings, although Mowery did report some pain in her right shoulder and hips. *Id*. (citing tr. 843-44). The ALJ found that from November 2020 to January 2021, Mowery was noted to ambulate normally, with a normal gait and station, and

15

that treating notes did not indicate an assistive device was necessary. *Id.* (citing tr. 1314-20; 1339-47).

In March 2021, Mowery underwent a consultative examination in which she used a walker; however, the examining doctor opined that she was able to ambulate with an antalgic gait, with good balance, and that she used a walker for support. *Id.*; tr. 1363. The examining doctor also opined that Mowery "is able to perform all activities of daily living." Tr. 1363. Finally, the ALJ noted more recent visits where Mowery was noted to have mostly unremarkable examinations, for example, a normal gait, 5/5 strength, and intact sensation in June 2021, tr. 88 (citing tr. 1370). *See also* tr. 89 (citing tr. 1446) (unremarkable examination except for decreased strength in the right upper extremity noted in December 2021).

An independent review of the record supports the ALJ's findings. *See, e.g.*, tr. 916 (freely moving all extremities in January 2020); 867 (normal range of motion in February 2020); 779, 785, 793 (full range of motion, no anxiety, agitation, or depression noted in June 2020); 1347 (normal gait and station in November 2020); 1379 (normal inspection of back and extremities, full range of motion with no tenderness in June 2021); 1451 (denies anxiety or depressed mood in July 2021); 1410 (Mowery noted to be capable of all activities of daily living, although needs extra time for housekeeping in March 2022). The ALJ also weighed the various medical opinions of record, tr. 90-92, in determining the RFC; Mowery does not challenge the ALJ's findings on any of these except those of Dr. Singh, discussed in further detail below. *See* doc. 15 at 16-19.

16

After citing the evidence discussed above, the ALJ found Mowery was capable of light work, but imposed additional limitations to account for her impairments to the degree they were supported by the evidence of record, including that she is only able to stand and/or walk for four hours out of an eight-hour workday. Tr. 82. Mowery claims the ALJ failed to properly analyze the medical evidence or to provide a sufficient rationale for why she partially discredited Mowery's complaints of pain. But the ALJ did not merely summarize the evidence, as Mowery claims; rather, she weighed it and provided cogent reasons for her findings. Mowery also claims the ALJ overemphasized her activities of daily living. Although the ALJ did consider this within her analysis, tr. 83, it was only one factor that she considered in conjunction with the medical evidence and opinions. *See* tr. 82-92. The last argument Mowery makes with any level of specificity is that the ALJ failed to consider a notation by Dr. Frank Carter suggesting that she use a cane, doc. 15 at 19. This is also refuted by the record, as the ALJ specifically considered Dr. Carter's opinion on that issue and found it not persuasive; Mowery does not challenge the ALJ's analysis of his opinion but argues only that the ALJ failed to "factor this into [her] decision." *Id*. This is plainly inaccurate. Remand is not warranted.

### D.    The Medical Opinion of Dr. Binny Singh, Psy. D.

In her fourth issue, Mowery claims the ALJ failed to properly analyze the medical opinion of Dr. Singh, a psychologist who performed a consultative examination of Mowery in July 2021. Docs. 15 at 19-20; 24 at 6-7. In essence, Mowery argues the ALJ failed to provide a sufficient explanation for her finding that Dr.

Singh's opinion was not persuasive. *Id.* The Commissioner contends the ALJ properly analyzed Dr. Singh's opinion and her finding is supported by substantial evidence. Doc. 22 at 21-24.

Under the amended Regulations in place at the time Mowery filed her claim,[5] the ALJ is to weigh the persuasiveness of medical opinions considering the following factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors which tend to support or contradict a medical opinion or prior administrative finding. 20 C.F.R. §§ 404.1520c(a)-(c); 416.920c(a)-(c). Supportability refers to the extent to which a medical source has articulated support for a medical source's own opinion and consistency refers to the extent to which the provider's opinion conforms to other evidence in the record. *Id.* at §§ 404.1520c(c); 416.920c(c); *Barber v. Comm'r of Soc. Sec.*, no. 6:20-cv-1222-LRH, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted).

Of the foregoing factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must explain how she considered supportability and consistency but need not explain her analysis of the remaining factors. *Id.* at §§ 404.1520c(b)(2); 416.920c(b)(2). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

---

[5] In January 2017, the SSA revised the rules relating to the evaluation of medical evidence for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c; 416.920c ("[f]or claims filed . . . on or after March 27, 2017, the rules in [§§ 404.1520c; 416.920c] apply.").

prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* at §§ 404.1520c(a); 416.920c(a). Notably, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, no. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (internal quotations and citation omitted).

Within her RFC analysis, the ALJ weighed Dr. Singh's opinion from July 2021 and found it was not persuasive "based on a lack of consistency and supportability with the record." Tr. 92. The ALJ specifically noted that, regarding supportability, Dr. Singh's opinions were based, almost exclusively, on Mowery's self-reported symptoms. *Id*. One of Dr. Singh's findings, specifically referenced by Mowery in her argument, was that Mowery "is not capable of managing her funds based on her reported memory problems." Doc. 15 at 20; tr. 1414. Notably, one month prior—in June 2021—Mowery herself indicated in a function report that she was able to pay bills, count change, handle a savings account and "use a checkbook/money orders." Tr. 408, 412.

Regarding Mowery's mental impairments specifically, the ALJ found at step two that although her depression was not a severe impairment, her anxiety was. Mowery does not challenge these findings. Tr. 79; *see* docs. 15 at 19-20; 24 at 6-7. Within that analysis, the ALJ found that Mowery was mildly limited in understanding, remembering, or applying information; and adapting or managing oneself. Tr. 81. The ALJ further found she was moderately limited in interacting with others and in

concentrating, persisting, or maintaining pace, *id*.; Mowery, again, does not challenge any of the ALJ's findings in this regard. *See* docs. 15 at 19-20; 24 at 6-7. In support of her assessment, the ALJ articulated the medical evidence she relied on in making those findings, tr. 81; she then noted additional evidence regarding Mowery's mental impairments within the RFC analysis, tr. 86-87, including the fact that Dr. Singh noted in his evaluation that Mowery had intact recent and remote memory, and fair insight, judgment, and impulse control. Tr. 87 (citing tr. 1414). Additionally, the ALJ considered that in December 2021, Mowery was noted to have an unremarkable mental status examination and denied depression and anxiety, although she then requested medication for those issues in January 2022. Tr. 87 (citing tr. 1445-46).

As noted above, Mowery's sole argument is that the ALJ failed to properly analyze Dr. Singh's opinion; however, this is contradicted by the analysis outlined above. The ALJ specifically considered Dr. Singh's opinion, finding it not persuasive, and adequately addressed the supportability and consistency of his opinion. Tr. 86-87, 92. The evidence the ALJ relied on when making the findings at step two regarding Mowery's mental impairments and in her explicit consideration of Dr. Singh's opinion, *id*., are sufficient for the Court to conclude her finding is supported by substantial evidence. Mowery, in essence, disagrees with the ALJ's finding and asks the Court to re-weigh the evidence to reach a different result, which it is not permitted to do. *See Crawford*, 363 F.3d at 1158–59. Remand is not warranted.

### E.    The Third-Party Statement from Mowery's Daughter

In her fifth and final issue, Mowery argues the ALJ failed to sufficiently explain why she found a third-party statement from Mowery's daughter unpersuasive. Doc. 15 at 20-21.

In her RFC analysis, the ALJ acknowledged the record contains statements from third parties, tr. 89-90. The portion of the record cited by the ALJ, tr. 351-58, consists of a statement from Brianna Kemp, Mowery's daughter, in which she states Mowery is unable to complete basic chores or stand for more than five minutes, needs a wheelchair, and has a lot of falls due to balance issues. Tr. 351. The ALJ found that Ms. Kemp's statement is not persuasive for the same reasons she found Mowery's subjective complaints unpersuasive, as discussed in the third issue above. Tr. 90. In addition, the ALJ noted that Ms. Kemp's statement was based on casual and lay observations, as opposed to objective medical testing and medical records. *Id*. Given that the ALJ explicitly considered Ms. Kemp's statement and articulated sufficient and well-supported reasons for finding it was not persuasive, I find Mowery's argument is meritless. Further, even if the ALJ erred in some regard relating to Ms. Kemp's statement, the error would be harmless given the ALJ's reasoning and the medical evidence discussed above. *See De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 832 (11th Cir. 2014) (finding ALJ's error in not specifically considering claimant's husband's statement in determining the RFC was harmless, noting it was "merely cumulative of [the claimant's] own testimony.").

## Recommendation

Because the ALJ's decision is supported by substantial evidence, I respectfully

**recommend**:

1. **Affirming** the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3);

2. directing the Clerk of Court to **enter judgment** in favor of the Commissioner and against Elizabeth Mowery; and

3. directing the Clerk of Court to **close** the file.

**Entered** in Jacksonville, Florida on November 20, 2023.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

## Notice

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (doc. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

c:
Honorable Anne C. Conway, United States District Judge
Robert G. Tarlock, Esquire
Nadine DeLuca Elder, Esquire
John F. Rudy, III, Assistant United States Attorney